CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

8/1/2022

JULIA C. DUDLEY, CLERK
BY:  s/ CARMEN AMOS
        DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

POWER HOME SOLAR, LLC D/B/A )
PINK ENERGY, )
              Plaintiff, )
 )
v. )
 )
GENERAC POWER SYSTEMS, INC, )
              Defendant. )
 )

CIVIL ACTION NO. <u>6:22CV00043</u>

## COMPLAINT AND JURY DEMAND

Plaintiff, Power Home Solar, LLC d/b/a Pink Energy (the "Plaintiff" or "PHS"), a nationally recognized and established solar energy company, brings this action against the Defendant, Generac Power Systems, Inc. (the "Defendant" or "Generac"), a relative newcomer to the solar energy business, for having sold and supplied it with defective solar energy system component parts resulting in ongoing financial damage and extraordinary harm to its business reputation and Generac's subsequent actions, including, but not limited to, failing to timely communicate known product issues, interfering with the operation of PHS's customers' solar energy systems without informing PHS, and using PHS to effectuate an unofficial product recall that Generac should have publicly conducted itself.

## PARTIES

1.    Plaintiff, PHS, is a Delaware limited liability company with a principal place of business located at 919 N. Main Street, Mooresville, North Carolina, 28115.  On or about May 1, 2022, PHS began doing business as Pink Energy.

2.    Defendant, Generac, is, upon information and belief, a Wisconsin corporation with a principal place of business located at S45W29290 Highway 59, Waukesha, Wisconsin, 53189.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction over this case under 28 U.S.C. §1331 whereby the district courts shall have original jurisdiction of any civil action arising under the laws of the United States, including the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et. seq*.

4.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) as a substantial part of the events occurred in this district giving rise to Plaintiff's claims.

## FACTS

### *PHS a Nationally Recognized Leader in Solar Energy Sales and Installation*

5.      PHS is a nationally recognized, established leader in the residential solar energy business.  PHS sells, designs, operates, finances, and installs solar panels and energy systems for primarily residential applications.  PHS's residential solar energy systems are consumer products used for household purposes, namely, for household energy generation.

6.      Since its founding, PHS has invested substantial time and money to market and establish a nationally recognized name and mark in the solar energy field including, but not limited to, sponsoring numerous community and civic organizations and events.

7.      In addition, PHS spends millions of dollars each year on advertising and marketing placements through mediums ranging from internet and social media to television, radio, and billboard advertising.  PHS has maintained partnership, endorsement, and sponsorship deals with several professional and collegiate sports organizations.

8.      For the year 2021, according to Solar Power World, PHS ranked number 7 among the top 228 residential solar contractors nationwide.  PHS has grown to serve approximately 35,000 customers and has made the Inc. 5000 list of America's fastest growing companies four (4) of the last five (5) years.

2

9.      In 2021, consumer sentiment for the PHS brand was so strong that its reviews across Facebook, Google and the Better Business Bureau were above 4.0 on a 5.0 scale.

*PHS Enters into a Business Relationship with Generac*

10.     The solar energy systems designed and sold by PHS include various component parts purchased by PHS from third-party suppliers, including but not limited to battery storage systems, inverters, optimizers, and disconnect switches.

11.     Generac provides backup and prime power generation systems for residential, commercial and industrial applications.

12.     In or about April 2019, Generac expanded into the home energy storage market by acquiring Pika Energy, Inc. ("Pika"), a manufacturer of battery storage technologies designed to capture and store solar or grid power for homeowners.  Prior to its acquisition of Pika, Generac was not involved in the residential solar energy business.

13.     Later in 2019, after Generac had acquired Pika, representatives of PHS and Generac met at a solar energy convention in Salt Lake City, Utah.  During their meeting, Generac urged PHS to give it the opportunity to supply PHS with certain component equipment for use with its solar energy systems.

14.     In or about January 2020, following this initial meeting in Salt Lake City, Jeff McAndrew of Generac traveled to PHS's Columbus, Ohio office to further solicit a business relationship between PHS and Generac.

15.     Also in January 2020, PHS's executive team traveled to Generac's headquarters in Waukesha, Wisconsin to negotiate an agreement through which PHS would purchase Generac's component parts for integration into its solar energy systems.

16.     During this meeting, Generac represented to PHS that its "PWRcell" solar energy and battery storage system could serve as a full-service solar energy and battery storage system for PHS's customers.

17.     Generac represented to PHS that its electrical components for solar energy systems were safe, fit for the purpose for which they were intended, and that Generac was experienced and skilled in designing and manufacturing such products.

18.     PHS reasonably relied on Generac's representations, as Generac is a large publicly-traded manufacturer of energy generation and storage products and equipment and has experience and expertise in manufacturing such products.

19.     As a result of this meeting, PHS and Generac entered into an agreement whereby PHS would purchase Generac's component parts through Generac's preferred distributor, CED Greentech ("CED").   PHS initially purchased Generac's products through CED at Generac's insistence.

20.     In approximately March of 2020, Generac and PHS began a marketing campaign to showcase their new partnership, which included airing television commercials to showcase PHS's residential solar energy systems equipped with Generac batteries and other Generac component parts.

21.     Generac also agreed to provide PHS with free leads for potential customers of solar energy systems.   These leads were generated through Generac's renewable energy advertising campaign and call center, along with an e-mail marketing campaign to its existing generator customers.

22.     Generac and PHS thereafter engaged in a substantial cross-marketing campaign,

including but not limited to television and social media advertising for both Generac's and PHS's products.

### *The Generac SnapRS Component Utilized in PHS Solar Energy Systems*

23.     Generac designed and manufactured its "PWRcell" system to incorporate several electrical components to be used in residential solar energy systems. As depicted below, Generac's complete "PWRcell" system includes PV Link String Inverters, SnapRS components, solar battery storage, and a backup generator:



24.     The Generac SnapRS (the "SnapRS") is an inline disconnect device designed to rapidly shut down power to individual solar panels as required by the National Electric Code ("NEC"). When signaled by the inverter, the SnapRS unit breaks the photovoltaic ("PV") circuit thereby reducing total PV array output voltage to a safe level — to less than 80 volts — in a matter of seconds.

25.     Generac markets its SnapRS devices as "a simple way to satisfy rapid shutdown compliance for solar + storage systems."



26.    The SnapRS devices are incorporated into Generac's PWRcell by connecting a SnapRS device to the negative lead of each solar panel in an array.



Diagram is applicable for most 60 cell PV modules. Modules with higher cell count may require a different arrangement. Contact Generac for more details.

27.    Typically, a customer's solar energy system will include several arrays of approximately eight solar panels.  Each array of solar panels is then connected to a PV Link optimizer.   Generac does not supply the solar panels to PHS.

28.    To comply with the NEC's 2017 Rapid Shutdown requirements, a single SnapRS is installed between each PV module (a/k/a solar panel) to protect against lightning and other electrical surges, particularly in situations where emergency responders or other professionals need

to access a roof equipped with a solar energy system, where electric shock or electrocution could result in serious injury or death, equipment and/or property damage.

29.     When PHS first began purchasing Generac's equipment, the SnapRS model being manufactured, sold, and supplied by Generac was known as the SnapRS 801.

30.     PHS also purchases PV Link substring optimizers from Generac, which serve to connect and optimize performance and energy output for groups of solar panels within a residential solar energy system.

31.     For customers with solar energy systems that are connected to wireless internet, the PWRcell system is capable of electronically communicating information to Generac related to system output, errors, and battery status.  Certain information is also made available to customers through Generac's "PWRview" home energy monitoring application.

32.     Generac is also able to send software updates and other information to customers' PWRcell systems that are connected to the internet.

33.     Further, Generac supplies PHS with PWRcell energy storage batteries, which store excess energy produced by a customer's solar energy system for use during periods of lower production or power outages.

34.     As the expert in manufacturing these component parts for solar energy systems, Generac designed the PWRcell system described above and manufactured the component parts utilized therein.

### *PHS Becomes Aware of Potential Defects in the SnapRS*

35.     In April 2021, PHS discovered a melted SnapRS unit during a service call for a customer in Cincinnati, Ohio who complained of a lack of system production.

36.     PHS reported this issue to Generac immediately, and provided Generac with photos of the melted SnapRS units.

37.     Generac, in turn, informed PHS that this Cincinnati event was the first it had learned of any such issues related to its SnapRS units "melting."

38.     However, Generac knew or should have known of the product failures related to its SnapRS "melting" prior to being informed of this incident in Cincinnati.

39.     During the summer of 2021, PHS became aware that other solar installers using these same Generac products were experiencing high rates of failure with the SnapRS connectors and were noticing signs of heat deformation in the SnapRS units during service visits.

40.     PHS was informed that at least one other solar energy installer reported overheating events with the SnapRS connectors directly to Generac during the summer of 2021.

41.     In early August 2021, the President of Valley Solar, another solar installer using Generac's products, reached out to PHS to inquire about whether PHS had noticed issues with Generac's SnapRS.

42.     Valley Solar informed PHS that it had noticed a "very high rate with SnapRS failing and needing replacement" and that the SnapRS units were showing signs of "heat deformation and even charring."

43.     Valley Solar told PHS that it had brought this issue to Generac's attention but had "not gotten much of a response."

### *Defects in the SnapRS Become Apparent in a Kentucky Fire*

44.     Also in August 2021, a fire occurred at the home of PHS customer, Lonnie Bentley, in Lancaster, Kentucky (the "Bentley claim").

45.     It was later determined that the fire was caused by overheating of the SnapRS units in Mr. Bentley's solar energy system.

46.     On August 12, 2021, PHS and Generac participated in a conference call during which PHS inquired about the cause of the fire and potential hazards associated with the SnapRS. During this conference call, Uwe Uhmeyer, Generac's Vice President of Engineering, informed PHS that Generac was investigating the cause of the SnapRS overheating but had not yet identified the precise cause of the issue.

47.     During this call, Generac disclosed to PHS for the first time that it was investigating "bulging and separation" issues associated with the SnapRS connectors and that it was in the process of developing and testing an updated model of the SnapRS which Generac referred to as the 801A.

48.     On August 18, 2021, another fire took place at the home of PHS customer Stephen Nightingale in Lexington, South Carolina (the "Nightingale claim").  Following a fire inspection, the cause of the Nightingale claim was determined to be a melting and/or exploding SnapRS.

### *Generac Assures PHS that a Firmware Update will Remedy the SnapRS Defects*

49.     Following the Bentley claim in Kentucky, Generac informed PHS that it had developed a firmware update which had the ability to remotely identify defective SnapRS units that were in danger of overheating and which presented fire hazards for PHS customers with systems utilizing SnapRS units.

50.     On August 19, 2021, Jeffrey McAndrew, Generac's Director of Sales for its East Region ("McAndrew"), informed PHS that Generac had "a fix in test" for the SnapRS overheating issues that it planned to release by late August 2021.

9

51.     McAndrew informed PHS that Generac discovered that a few SnapRS units were found to be overactive by turning on and off repeatedly when they should have been in either the "on" or "off" state, which condition generated heat in the unit causing them to "bubble out." McAndrew assured PHS that Generac's new firmware would address the issue by keeping the signal constant (in the "on" position) until there is a forced rapid shutdown.

52.     McAndrew further informed PHS that the issue had been caused by the SnapRS "turning on and off repeatedly."

53.     On August 19, 2021, McAndrew sent another email to PHS and stated that Generac was sending the firmware updates "today to a bunch of sites then the rest will happen over the next few days."  McAndrew closed this email by telling PHS "all good though.  So glad that was resolved quickly."

54.     On September 29, 2021, McAndrew emailed Josh Smith at PHS concerning the SnapRS firmware update and stated that Generac had not seen any "post firmware update failures" in situations where the SnapRS at issue had not exhibited issues prior to the firmware update.

55.     In early fall 2021, during the same time that Generac was reassuring PHS that the firmware update would rectify any problems in the SnapRS, PHS was preparing for a going-public transaction and had obtained a business valuation of $1.05 billion as of September 2021.

56.     In mid-October 2021, following the Bentley and Nightingale claims, PHS asked Generac for a report of the corrective action being taken regarding the SnapRS failures and the effectiveness of those actions.  PHS also sought confirmation that Generac would indemnify PHS for the Bentley and Nightingale property damage claims and give PHS a broader indemnification

for other claims potentially related to SnapRS failures, which by that time included approximately fifteen (15) claims.

57.     Despite this request, Generac failed to provide PHS with any such report.

### *PHS and Generac Negotiate a Buy-Sell Agreement for Direct Purchase*

58.     In the fall of 2021, PHS and Generac began negotiating an agreement (the "Buy-Sell") through which PHS would purchase equipment directly from Generac, rather than through CED.

59.     Throughout the fall of 2021 and during the Buy-Sell negotiations, Generac continued to assure PHS that the firmware update it had issued remotely to PHS's customers' solar energy systems had remedied the SnapRS overheating issues and further represented that Generac had not seen instances of its SnapRS overheating, or other issues in the systems which had received the firmware update.

60.     However, during the Buy-Sell negotiations, Generac was aware that despite the firmware update, dangers of overheating and burning due to the SnapRS defect remained.

61.     That is, during the Buy-Sell negotiations, Generac did not disclose to PHS that those dangers of overheating and burning from the SnapRS defect remained despite Generac issuing the firmware update and its knowledge of same.

62.     Generac was also aware that a significant number of PHS's customers had not received the firmware update because their solar energy systems were not connected to the internet.

63.     During the Buy-Sell negotiations, Generac failed to disclose that a significant number of PHS's customers had not received the firmware update because their solar energy systems were not connected to the internet, despite its knowledge of same.

11

64.     Generac was fully aware during this time that its firmware update would have adverse effects on the overall operation and energy production of PHS customers' solar energy systems, by shutting down entire arrays of solar panels for prolonged periods.

65.     Despite its knowledge, Generac did not disclose to PHS any of the adverse effects its firmware update would have on the overall operation of PHS customers' solar energy systems, despite their knowledge of the same.

66.     During the Buy-Sell negotiations, Generac continued to intentionally conceal the known dangers and adverse effects still present in the SnapRS even despite the firmware update and it did so with the intent to induce PHS to execute the Buy-Sell.

67.     Throughout the Buy-Sell negotiations, Generac continued to represent to PHS during the Buy-Sell negotiations that the firmware update had fixed the SnapRS issues and that its testing indicated that there were no post firmware update failures.

68.     On December 5, 2021, PHS and Generac executed the Buy-Sell.  Pursuant to its terms, PHS agreed to be a non-exclusive buyer of certain Generac products and maintain a sufficient inventory of Generac's products to meet PHS customer needs. Further, Generac agreed to defend, indemnify, and hold PHS harmless from third-party claims arising from, or in connection with, manufacturing defects resulting in injury, death or damage to real or personal property.

69.     In addition, Generac acknowledged and agreed that the Buy-Sell would apply retroactively to any third-party claim relating to or involving defects in the SnapRS whether existing prior to, or after, the effective date.

***PHS Learns that the Firmware Update Disabled its Customers' Solar Energy Systems***

70.     Beginning in late 2021, PHS noticed a dramatic spike in complaints from customers claiming that their solar energy systems were not producing the energy output they had been promised, were not seeing noticeable savings on their monthly utility bills, and/or experiencing complete shutdowns of their solar energy systems indicated by error messages on their Generac inverters.

71.     PHS investigated this issue and learned that the cause of its customers decreased production and/or system shutdown was what the Generac inverter coded as a "PVRSS Lockout" system error.

72.     PHS learned that a PVRSS Lockout is caused when a PV Link or inverter detects a malfunctioning or overheating SnapRS in a particular array of solar panels.  When this happens, the entire array goes into "lockout mode" and the array does not generate any power until the lockout is cleared.

73.     Clearing a PVRSS Lockout generally requires a service technician to replace the SnapRS on the array that is in lockout mode.

74.     In late 2021 and into early 2022, PHS experienced a massive increase in customer service calls and complaints related to the PVRSS Lockout that required PHS to shift its business away from installation of new solar energy systems and toward maintenance of existing customers' systems that were experiencing PVRSS Lockouts and other issues caused by burning, melting, or otherwise malfunctioning SnapRS units.  A number of these issues and complaints originated in and around Lynchburg, Virginia, and other parts of the Western District of Virginia.

75.     Prior to the PVRSS Lockout issues caused by Generac's firmware update, PHS averaged approximately 800 phone calls into its customer service center per month.

76.     After the PVRSS Lockout issues began and through the current date, PHS has averaged approximately 30,000 calls into its customer service center per month, amounting to an approximately 3,650% increase in customer service calls during this period.

77.     In addition to the drastic increase in customer service calls PHS has received related to its customers experiencing PVRSS Lockouts, PHS was also required to schedule service visits to replace customers' defective SnapRS units and to clear PVRSS Lockouts.  A number of these visits have occurred in and around Lynchburg, Virginia, and other parts of the Western District of Virginia.

78.     Due to this massive increase in customer service calls and visits, PHS has been required to hire and train additional customer service representatives, field service technicians, and other employees to handle customer service and maintenance for customers experiencing PVRSS Lockouts and other issues caused by the SnapRS units.

79.     The increase in customer service calls also required PHS to divert its installation teams to handle customer service issues instead of installing systems for new customers.

### *Generac Issues the SnapRS 801A as a Supposed Fix for the Product Defects*

80.     Beginning in late 2021, Generac started supplying PHS with a second-generation SnapRS known as the 801A.  Initially, Generac instructed PHS to only replace the SnapRS units that were charred or melted and to leave any undamaged units in place.

81.     Generac represented to PHS that the SnapRS 801A had been redesigned to fix the product defect in the SnapRS 801 that was causing the SnapRS to melt, burn, or otherwise malfunction.

82.     As a result, PHS began to install the SnapRS 801A and replace its existing customers' SnapRS 801 units with 801As.

83.     However, Generac knew or should have known that the SnapRS 801A contained the same or similar defects as the SnapRS 801.

84.     Despite repeated assurances to the contrary from Generac, PHS did not see any reduction in incidents of PVRSS Lockouts in customers after replacing the SnapRS 801s with 801As. Instead, PHS continued to see the same defects in the 801As, including solar arrays going into PVRSS Lockout due to defective SnapRS 801As, resulting in PHS service technicians removing burnt and melted 801As from its customers' solar energy systems.

### *PHS Continues to Discover Burned and Melted SnapRS Units in its Customers' Systems*

85.     During the spring and early summer of 2022, PHS was conducting large-scale replacements of its customers' defective SnapRS devices to clear PVRSS lockouts so that its customers' systems would be fully operational.

86.     PHS was increasingly spending extraordinary amounts of time to deal with customers who were experiencing PVRSS Lockouts and who needed service calls to replace defective SnapRS to clear the lockout. A number of these customers live in and around Lynchburg, Virginia, and other parts of the Western District of Virginia.

87.     The charred and melted SnapRS units being removed from customers' solar energy systems soon began to pile up in PHS's warehouses:



88.    Generac was unable to supply PHS with enough replacement SnapRS devices to keep up with the Volume of defective SnapRS devices that PHS was removing from its customers' systems, which PHS began storing in boxes in its warehouses:



89.    In the spring of 2022, because of the continued incidents involving the SnapRS and the potential hazards to PHS customers and their property, PHS inquired of Generac as to whether

a report had been filed with the Consumer Product Safety Commission ("CPSC") or other government agency, and whether a product recall had been initiated.

90.     In response, Generac represented to PHS that it had submitted a report to the CPSC, and that it did not believe any corrective action was necessary, including a product recall.

91.     On May 22, 2022, PHS followed up this inquiry by email and requested a copy of the report Generac had submitted to the CPSC and any response Generac had received.   Generac refused to provide this information to PHS.

### *Generac Acknowledges Product Issues with the SnapRS and Releases the 802*

92.     Throughout the spring of 2022, in an effort to address the severe backlash from its customers, PHS asked Generac to acknowledge the widespread issues being caused by the SnapRS product failures through a letter to PHS's customers.

93.     On May 23, 2022, after much prodding, Generac finally agreed to send a letter to a selection of PHS's customers to address these product failures.

94.     Initially, Generac refused to send this letter to all of PHS's customers that had experienced PVRSS Lockouts and other SnapRS-related issues, and instead sent the letter to only a selection of customers chosen by Generac.   Generac's CEO has since admitted that it should have been more forthcoming with PHS's customers.

95.     Generac's letter stated that PHS's customers "may have experienced certain issues with a particular Generac component of your solar energy system, the SnapRS801 or 801A."

17

96.     Generac further stated in this letter that it had developed the new SnapRS802, which had been "designed to replace the RS801 and RS801A, increasing performance and reliability."

97.     Generac began supplying PHS with SnapRS 802s to replace the defective SnapRS 801s and 801As in customers' solar energy systems shortly before sending the letter.  However, until very recently, Generac was unable to supply PHS with sufficient volume of SnapRS 802s to account for the number of customers experiencing PVRSS Lockouts and other SnapRS-related issues.

98.     In late May and early June of 2022, PHS contacted Generac to inform them of continued incidents of burned and melted SnapRS devices being found in PHS's customers solar energy systems.

99.     As recently as June 2022, Generac has acknowledged a near 50% failure rate in the SnapRS units, accounting for the approximately 41% of PHS customers with Generac PWRcell systems that have experienced PVRSS Lockouts and another 8% that never received the firmware update.  Incredibly, Generac made this admission as if to not fully understand or appreciate the magnitude of the problem, implying to PHS that it was positive news that the failure rate was not yet close to 100%.

100.    On June 1, 2022, Aaron Jagdfeld, Generac's CEO, responded to an email regarding continued incidents of burned and melted SnapRS devices and stated "all of our testing has shown that as long as the system has the latest firmware protections, it is safe from any kind of thermal situation as the system would lock out the PV link and associated string – **this was an interim solution until those 802 modules** were on the market."

101.    When the firmware update was first issued in August 2021, and in the negotiations leading up to the Buy-Sell Agreement or any time thereafter, Generac did not disclose to PHS that the firmware update was only an "interim solution" for the issues related to SnapRS product defects.

102.    Mr. Jagdfeld's June 1, 2022 email also confirms that the firmware update caused PV links and associated strings of solar panels to be locked out whenever a defective SnapRS was detected.

103.    In July 2022, after repeated inquiries from PHS on the issue, Generac also revealed to PHS that a significant number of PHS's customers never even received the firmware update because their PWRcell system was not connected to the internet.

104.    This was the first instance that PHS was informed that customers had not received the firmware update and were still at risk of potential hazards from the defective SnapRS units.

105.    At all relevant times, Generac knew or should have known that customers had not received the firmware update and remained at risk from potential hazards from the SnapRS defect.

106.    Mr. Jagdfeld and other Generac executives also admitted to failing to perform sufficient due diligence prior to Generac's acquisition of Pika, particularly relating to potential product liability issues associated with defects in Pika's products.

### The SnapRS Product Failures are Ongoing

107.    On June 30, 2022, a fire occurred at the home of PHS customer Julia Arline in Suffolk, Virginia (the "Arline claim").  While the Arline claim is currently under investigation with an upcoming fire inspection, the information available thus far indicates the cause of the fire was a defective SnapRS.

108.    As recently as mid-July 2022, PHS customers continued to experience SnapRS units burning, melting, and even exploding.  A number of these customers live in and around Lynchburg, Virginia, and other parts of the Western District of Virginia. For example, the photographs below recently taken by a PHS service technician illustrate the damage caused by a defective SnapRS to the solar panel to which it was attached:



109.    The SnapRS product failures are almost universally seen at the center of the device, indicating that the failures are caused by design and/or manufacturing defects that are present in large quantities of the SnapRS:



110.   In SnapRS devices that have exploded or melted through entirely, the explosion and/or melting also appears to have originated at the center of the SnapRS:



111.   PHS continues to uncover exploded and melted SnapRS units similar to the device pictured above at its customers' homes.

21

112.    Customers also continue to complain of system failures caused by the SnapRS defects.  For example, on July 28, 2022, a customer posted to a Facebook group: "Sad that our system only functioned for months before our snaps started to literally bust open."

## All comments   ⌄



**Pamela Rodriguez Claytor**
They showed us ours and they were all busted and cracked. Definitely not able to be reused anywhere. Sad that our system only functioned for months before our snaps started to literally bust open.

15m    **Like    Reply**

113.    The Facebook groups and other online forums where these complaints and negative reviews are featured all target PHS.  Generac has largely been insulated from any negative publicity due to the SnapRS defects.

### *The SnapRS Defects are Causing PHS Ongoing Monetary and Reputational Harm*

114.    PHS has suffered significant monetary damages as well as the loss of goodwill from the product defects in Generac's SnapRS components and the resulting system failures caused by Generac's firmware update.

115.    For example, PHS has incurred significant costs and expenses in connection with sending service technicians to replace defective SnapRS parts in customers' solar energy systems.

116.    As of this date, PHS has made over 16,000 service calls to customers affected by SnapRS issues at an estimated cost of over $1,000 per service call.   The number of service calls

22

is growing daily as customers continue to experience service outages and other problems caused by the SnapRS defects.

117.    In addition to the service costs associated with replacing defective SnapRS products, PHS is also incurring significant damages resulting from Generac's delays in providing PHS with replacement SnapRS 802s.

118.    In total, PHS has approximately 19,000 customers with solar energy systems that utilized the Generac PWRcell components, including the SnapRS.  A number of these customers live in and around Lynchburg, Virginia, and other parts of the Western District of Virginia.

119.    To date, approximately half of these customers have experienced PVRSS Lockouts requiring replacement of the SnapRS.  PHS understands that eventually each of these customers will require service to replace the defective SnapRS.

120.    This delay has resulted in PHS having to reimburse its customers for loan payments during time periods in which their systems were either inoperable or producing energy at a significantly reduced capacity due to a shutdown caused by the PVRSS Lockouts.  PHS has also had to remove systems and fully unwind and pay off the loans of customers who experienced more severe issues caused by defective SnapRS.

121.    PHS has been required to hire additional customer service team members, both to answer phone calls from customers and to perform service in the field because of the dramatic increase in high-priority customer service appointments to clear PVRSS Lockouts and replace defective SnapRS devices.  As a result, PHS was unable to install as many solar energy systems for new customers as it would have but for the need to dedicate its resources to performing service work related to SnapRS issues.

122.   PHS has also suffered significant harm to its reputation and goodwill because of the SnapRS product failures and the effect of Generac's firmware update on customers' solar energy systems.

123.   An overwhelming number of negative reviews and complaints to the Better Business Bureau, social media, and other review platforms have damaged PHS's reputation in the markets in which it does business and interfered with its relationships with actual and potential customers.

124.   The vast majority of customers who have filed complaints against PHS cited to not receiving the energy production from their solar energy systems that they were promised at the time of sale.

125.   The primary reason customers experienced decreased and/or insufficient system production is due to a PVRSS Lockout shutting down arrays of customers' panels after identifying a defective SnapRS.

126.   These problems have been exacerbated by Generac's delays in developing the SnapRS 802 as a replacement for the defective SnapRS 801 and 801A and delays in supplying PHS with sufficient SnapRS 802s to meet the number of PHS customers dealing with PVRSS Lockouts.

127.   Generac's faulty and defective component parts caused PHS to incur direct and actual damages in the tens of millions of dollars, consisting of costs incurred in connection with reimbursements for property damage caused to its customers' homes by defective SnapRS devices, replacing defective SnapRS devices in its customers' solar energy systems, and reimbursements for customers' loans for periods during which their solar energy systems were rendered inoperable due to Generac's firmware update.

128.   Generac refused and continues to refuse to reimburse PHS for these amounts despite repeated requests and demands.

129.   PHS has invoiced Generac for service calls associated with the replacement of defective SnapRS, resetting PVRSS Lockouts in its customers' systems, and reimbursements of customer loans Generac has refused to pay these invoices in full, and the current outstanding amount owed by Generac to PHS on these invoices is in excess of thirty-nine million dollars ($39,000,000).

130.   PHS has also suffered brand and reputational damages and lost profits in the hundreds of millions of dollars due to the damage to its brand and reputation caused by customer dissatisfaction and complaints resulting from loss of production and system errors due to the SnapRS defects and PVRSS Lockouts.

131.   Generac's delay in developing a sufficient replacement for the SnapRS and supplying those replacements to PHS has caused numerous PHS customer complaints, ridicule and demands resulting in a public relations disaster.

132.   Upset customers have taken to social media by the thousands to express their dissatisfaction with the performance of their solar energy systems and lack of production they have experienced.  For example, as recently as July 27, 2022, PHS customers were sharing photos of their Generac inverter indicating a PVRSS Lockout and stating that their systems were not working:



133.    The social media outrage against PHS caused by Generac's defective products has erupted, and, in addition to anger towards the company, has grown to include personal attacks on PHS's executives and their family members.

134.    The damage to PHS's brand and reputation resulting from the barrage of negative publicity related to the SnapRS issues has caused a sharp increase in cancellations of both potential customer appointments and signed installation contracts.  For potential customer appointments that are not cancelled, PHS has experienced a significant decrease in its close rate during the same period.

135.    Between early 2020 and the present, both cancellations of sales appointments and cancellations of signed installation contracts have increased by approximately 20%. This increase in appointment cancellations and the increased cancellation of signed installation contracts has caused PHS to suffer approximately one hundred fifty-five million dollars ($155,000,000) in lost revenue.

136.    PHS has also suffered significant lost profits from having to shift its installation teams away from installing new solar energy systems to generate revenue for the company, to performing service for existing customers to address the onslaught of SnapRS-related problems.

137.    Generac's wanton, willful, and reckless conduct described above, by (i) concealing the SnapRS defects from PHS, (ii) failing to inform PHS of the devastating effect the firmware update would have on its customers' solar energy system production, and (iii) failure to develop a suitable alternative to the defective SnapRS units has had a devastating effect on PHS's business.

138.    As described above, as of September 2021, shortly before the PVRSS Lockout issues began to manifest, PHS had obtained a business valuation of $1.05 billion. By June 2022, PHS's business valuation had plummeted to $452 million, as a direct and proximate result of the harm Generac's defective products have caused to PHS's business and reputation.

### COUNT I
**(Violation of the Magnuson-Moss Warranty Act – 15 U.S.C. §§ 2301 et seq.)**

139.    Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 138 above.

140.    As stated above, Generac has breached an express warranty regarding the SnapRS.

141.    PHS is a consumer as defined in 15 U.S.C. § 2301(3).

142.    PHS purchased a consumer product from Generac for purposes other than resale and is entitled to recovery under both the terms of Generac's express, written warranty and applicable state law.

143.    Generac is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

144.    Generac is in the business of supplying the aforementioned consumer products to consumers such as PHS.

145.    The SnapRS is a consumer product as defined in 15 U.S.C. § 2301(1).

146.    The SnapRS is routinely used as a component in residential solar energy systems and used primarily for household purposes.

147.    Generac provided an express, written warranty as defined in 15 U.S.C. § 2301(6).

148.    The above-stated conduct constitutes breach of the implied warranties of merchantability and fitness for a particular purpose actionable under the Magnuson-Moss Warranty Act as defined in 15 U.S.C. §§ 2301(7), 2308, and 2310(d)(1) and (2).

149.    By reason of the Generac's breach of the implied warranty of merchantability and fitness for a particular purpose and breach of express warranty, Generac has violated the statutory rights due PHS under the Magnuson-Moss Warranty Act, thereby economically damaging PHS.

150.    Accordingly, Generac is liable to PHS for all available remedies, damages, and awards under the Magnuson-Moss Warranty Act, including reasonable attorneys' fees.

## COUNT II
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

151.    Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 150 above.

152.    Every contract implies a covenant of good faith and fair dealing among the parties to the contract.

28

153.    The covenant of good faith and fair dealing requires that neither party shall do anything that will have the effect of injuring the right of the other party to the fruits of the contract.

154.    As stated above, in or about February 2020, PHS and Generac entered a contractual arrangement whereby PHS would purchase, and Generac would supply, component parts for use in PHS's solar energy systems.

155.    Further, PHS and Generac agreed to engage in a cross-marketing campaign to showcase their partnership and to refer potential new customers to each other. As part of their bargained-for-exchange, Generac agreed to support PHS's purchase and installation of Generac's component parts by, *inter alia*, providing PHS with the benefit of its skill and expertise inherent in the design and manufacture of its products and, in particular, the SnapRS devices.

156.    Both parties agreed to endeavor to work together to support their partnership and to achieve their common goal of raising their visibility in the solar energy market, increasing their respective sales revenue, and providing exceptional customer service whenever and wherever necessary.

157.    By the above-stated conduct, including Generac's failure to disclose the extent of the SnapRS issues during the summer of 2021; its false representation that Generac had not observed any post-firmware failures as of late September 2021; withholding critical information from PHS that a large number of its customers never received the firmware update owing to internet connectivity; and, that the 801 and 801A were only intended as a temporary fix, the Defendant has breached the covenant of good faith and fair dealing owed to the Plaintiff and by reason thereof, is liable to the Plaintiff for the damages it has caused it to incur, plus interest, costs and reasonable attorney's fees.

## COUNT III
### (Promissory Estoppel)

158.　Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 157 above.

159.　Generac promised it could supply sufficient component parts for use in PHS's solar energy systems, and that it would support its partnership with PHS by providing the requisite skill and expertise inherent in the design and manufacture of those component parts.

160.　Generac made such a promise to induce PHS (i) to enter into a contractual relationship and (ii) remain in that contractual relationship once the defect in the SnapRS became apparent. Generac assured PHS throughout that the firmware update would resolve the defect.

161.　PHS relied on the representations of Generac and proceeded to purchase component parts, including the SnapRS, that it believed would be free from defect.

162.　In reasonably relying upon Generac's representations to its detriment, the Plaintiff has suffered damage for which the Defendant is liable.

## COUNT IV
### (Breach of Contract, Express and Implied)

163.　Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 162 above.

164.　By the terms of their contractual arrangement beginning in February 2020, PHS agreed to purchase, and Generac agreed to supply, component parts in sufficient quantities for use in PHS's solar energy systems.

165.　As part of their bargained-for-exchange, Generac provided PHS with assurances that the SnapRS units would be free from defect and that it could supply component parts throughout their relationship in sufficient volume to meet PHS's customer needs.

166.    Pursuant to the above-stated conduct, the Defendant is in breach of contract, both express and implied, and is liable to the Plaintiff for the damages it has caused it to incur, plus interest, costs and reasonable attorney's fees.

## COUNT V
### (Negligence)

167.    Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 166 above.

168.    Generac owed a duty of care to PHS to provide critical component parts for its residential solar energy systems that would meet the applicable standard of care for electrical components in the United States.

169.    Generac's conduct, including but not limited to its failure to identify product defects in the SnapRS units by conducting proper product testing and quality control, constitutes a breach of the standard of care owed by Generac to PHS.

170.    Generac represented itself to PHS as being an expert in the solar energy generation and storage business.  PHS relied on Generac's expertise in the design and manufacture of electrical component parts for residential solar energy systems.

171.    Generac further misrepresented critical information regarding the root cause of the SnapRS product failures, resulting in further and more widespread failures of PHS customers' solar energy systems.

172.    Generac's conduct as alleged herein constitutes an extreme departure from the ordinary standard of conduct.

173.    As a direct and proximate result of Generac's negligent and reckless conduct, PHS has sustained damages in an amount to be proven at trial, in the hundreds of millions of dollars.

31

<u>COUNT VI</u>
**(Products Liability for Design Defect, Manufacturing Defect, and Failure to Warn)**

174.   Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 173 above.

175.   Generac sold PHS its SnapRS units for use in the ordinary course of business and intended for use in solar energy systems purchased by PHS's customers.

176.   Generac held itself out as an expert in the field of designing and manufacturing electrical component parts for solar energy systems.

177.   At the time Generac designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the SnapRS units into the stream of commerce, the devices were defective and presented a substantial danger to users of the product when put to its intended and foreseeable use. Generac failed to adequately warn of the device's known or reasonably knowable dangerous propensities, and further failed to adequately provide instructions on the safe and proper use of the device.  Generac knew that the SnapRS units were being sold and used without proper inspection for defects.

178.   Generac also knew, or should have known, that the SnapRS units sold to PHS and used in PHS's solar energy systems had design and/or manufacturing defects that were likely to cause damage to PHS's solar energy systems.

179.   Generac failed to properly warn PHS of the risks the defective SnapRS units posed and of the potential resulting damage to PHS's solar energy systems.

180.   The SnapRS units purchased from Generac and used in PHS's solar energy systems was a substantial cause of the damage to PHS's solar energy systems.

181.    As a direct and proximate result of Generac's defective products and/or failure to warn, PHS has suffered damages in an amount to be proven at trial, in the hundreds of millions of dollars.

## COUNT VIII
### (Breach of the Implied Warranty of Merchantability and Fitness for a Particular Purpose)

182.    Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 181 above.

183.    Generac sold PHS the SnapRS units at issue herein even though they were not merchantable and/or fit for the purpose for which they were intended to be used in violation of these implied warranties.

184.    Generac's breaches of the implied warranty of merchantability and/or fitness for a particular purpose has caused damage to PHS.  The amount of damages suffered by PHS will be proven at trial.

185.    PHS is entitled to consequential damages under Va. Code Ann. § 8.2-715 whereby PHS's losses resulted from injury to property caused by Generac's breach of the implied warranty of merchantability.

## COUNT VIII
### (Breach of Express Warranty)

186.    Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 185 above.

187.    Generac expressly warranted to PHS that:

(a)    its specifications and design of the SnapRS units were safe and in compliance with all applicable laws, including the National Electric Code; and

(b)     Generac would adequately manufacture and test the SnapRS units before

shipping them to PHS.

188.    These warranties were materially false as the SnapRS units were in fact not safe,

were of a defective design and/or manufacture and caused damage and injury, thereby amounting

to a breach of Generac's express warranties to PHS.

189.    As a direct and proximate result of Generac's breaches of these express warranties,

PHS has suffered and continues to suffer damages in an amount to be determined at trial.

190.    PHS is entitled to consequential damages under Va. Code Ann. § 8.2-715 whereby

PHS's losses resulted from injury to property caused by Generac's breach of its express warranty.

## COUNT IX
### (Negligent Interference with Prospective Economic Relations)

191.    Plaintiff hereby realleges and incorporates by reference the allegations contained

in Paragraphs 1 through 190 above.

192.    At all times mentioned herein, an economic relationship existed between PHS and

its customers, pursuant to which PHS sold to its customers solar energy systems, which contained

component parts that were manufactured by Generac.

193.    As a result of the existence of these relationships between PHS and its customers,

there existed a reasonable probability of future economic benefit to PHS.

194.    Generac was aware of PHS's existing customer relationships as described herein,

and further knew of the probability of future economic benefits to PHS arising from these

relationships.

195.    Generac knew or should have known that the conduct described above, including

but not limited to the design and manufacturing defects present in the SnapRS units and Generac's

failure to maintain sufficient quality control over its manufacturing processes would disrupt the

34

prospective economic relationships described above, but nevertheless Generac negligently engaged in said conduct, interfering with and harming PHS's customer relationships.

196.    As a direct and proximate result of Generac's conduct alleged above, PHS has suffered damages in an amount to be proven at trial, in the hundreds of millions of dollars.

**COUNT X**
**(Fraudulent Inducement)**

197.    Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 196 above.

198.    As explained above, Generac made several knowingly false statements to PHS while the parties negotiated the Buy-Sell Agreement in the fall of 2021.

199.    These false representations include Mr. McAndrew's September 29, 2021 email that informed PHS that Generac had not observed any post-firmware failures in its SnapRS units that had not exhibited issues prior to the update.

200.    Generac also intentionally withheld the critical information from PHS that a significant number of PHS's customers had not received the firmware update because their PWRcell systems were not connected to the internet.

201.    But for the knowingly false statements identified above, PHS would not have entered into the Buy-Sell Agreement or agreed to its terms limiting the potential damages PHS could recover from Generac.

**COUNT XI**
**(Equitable Indemnification)**

202.    Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 201 above.

203.   Equity requires that Generac, and not PHS, should bear the burden and responsibility for any harm which directly results from Generac's defective design, defective manufacture, or negligence with regard to the manufacture, production, supply, and sale of the dangerous and defective SnapRS units which are the subject of this Complaint.

204.   The principles of equitable indemnification arise where, as here, the conduct of one Party to a transaction creates tort liability arising out of the parties' relationship.

205.   As alleged herein, PHS has faced and continues to face liability for damage caused by the defective SnapRS units installed in PHS's customers' solar energy systems.

206.   PHS expressly denies the liability it has been subjected to resulting from Generac's defective SnapRS units, and Generac must in equity be made to indemnify PHS for any damages and attorneys' fees incurred arising therefrom.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, Power Home Solar, LLC d/b/a Pink Energy, respectfully requests this Honorable Court grant it the following relief:

1.   Pursuant to Counts I through XI, enter judgment against the Defendant, Generac Power Systems, Inc., for the damages it has caused PHS to incur, including general, special, and consequential damages in an amount to be determined at trial, plus interest, costs and reasonable attorney's fees;

2.   Award PHS punitive damages as a result of Generac's willful, wanton, and reckless conduct; and

3.   Such other and further relief as this Court deems just and equitable.

PLAINTIFF HEREBY CLAIMS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE

August 1, 2022

Respectfully submitted,

/s/   Mark J. Peake
Mark J. Peake, Esq.
CASKIE & FROST LLP
2306 Atherholt Road
Lynchburg, VA 24501
434-846-2731
mpeake@caskiefrost.com

*Of Counsel:*

Douglas B. Otto, Esq.
Michael P. Burke, Esq.
DARROWEVERETT LLP
50 Congress Street, Suite 1040
Boston, MA 02108
617-443-4500
dotto@darroweverett.com
mburke@darroweverett.com
Edward J. Fanning, Jr.
McCARTER & ENGLISH LLP
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102
efanning@mccarter.com

*Attorneys for Plaintiff Power Home Solar, LLC,
d/b/a Pink Energy*

*(applications for pro hac vice admission forthcoming)*