IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | | |
|---|---|---|
| POWER HOME SOLAR, LLC D/B/A PINK ENERGY, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Case No. 6:22-cv-00043 |
| GENERAC POWER SYSTEMS, INC., | ) ) ) | |
| *Defendant.* | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TRANSFER VENUE**

Pursuant to Federal Rule of Civil Procedure 12 and the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4, Defendant Generac Power Systems, Inc. ("Generac") respectfully moves for an Order (1) compelling Plaintiff Power Home Solar, LLC ("PHS") to arbitrate its claims against Generac and (2) dismissing Plaintiff's Complaint, or, in the alternative, staying further litigation of those claims pending the outcome of arbitration. In the event this Court does not dismiss the litigation, Generac moves in the alternative to transfer venue to the United States District Court for the Southern District of New York ("Southern District of New York") pursuant to 28 U.S.C. § 1404.

## I.   PRELIMINARY STATEMENT

This case arises out of a commercial agreement for the purchase and sale of component parts for residential solar energy systems. Pursuant to a negotiated Buy/Sell Agreement (the "Agreement"), PHS agreed to buy, and Generac agreed to sell, Generac's Clean Energy products, including its PWRcell energy storage system, which PHS integrated into its consumer solar energy system installations. The Agreement contains a broad arbitration clause requiring arbitration of "any dispute" between the parties. The two narrow exceptions to that arbitration clause—addressing instances in which arbitration is unavailable under applicable law, and third-party

1

indemnification or contribution claims asserted in pending litigation—confirm its expansive scope and are inapplicable to this dispute.

Notwithstanding its obligation to arbitrate any dispute with Generac other than third-party indemnification or contribution claims, PHS has filed its Complaint in this action seeking relief in connection with matters directly related to the terms of the Agreement.  In so doing, PHS repeatedly attempts to assert rights under the same Agreement that requires it to arbitrate its claims.  But these claims are not properly before this Court, and they must be resolved in arbitration for the following reasons.

First, the parties' arbitration agreement is valid under New York law, the law selected by the Agreement.  All elements of a binding contract are present in the arbitration provision, and PHS raises no defenses or grounds for revoking it.  PHS's perfunctory fraudulent inducement claim purports only to apply to the Agreement as a whole and to the provision limiting liability, and not specifically to the arbitration agreement, as it must to challenge PHS's obligation to arbitrate.

Second, the scope of the arbitration agreement is very broad, and the Fourth Circuit has confirmed that similarly-worded arbitration provisions cover all disputes between the parties, past and present, and irrespective of whether they arise directly out of the contract between them.  Each claim that PHS asserts arises in connection with product sales governed by the Agreement, and even if it did not, it would be encompassed by the arbitration agreement as a dispute between the parties.  Furthermore, even if there were some ambiguity about the scope of the arbitration provision as applied to the claims raised in the Complaint, any such ambiguity must be resolved in favor of arbitration under longstanding Supreme Court precedent.

Apart from the enforceable arbitration provision, the Agreement also contains a forum selection clause that requires any litigation to be brought in the state or federal courts in New York

County, New York—subject at all times to the prior obligation to arbitrate any dispute. The forum selection clause is mandatory, permitting venue exclusively in the selected New York courts, and creating a presumption of enforceability under federal law. Because PHS cannot rebut that presumption by showing any unreasonableness in the enforcement of the forum selection clause, because the clause applies by its clear terms to all claims PHS has made, and because no extraordinary circumstances are present to justify rejecting the clause, this action should be transferred to the Southern District of New York.

Accordingly, this Court should dismiss or stay this action pending arbitration of PHS's claims. In the alternative, should the Court determine not to dismiss the instant litigation, it should transfer venue to the Southern District of New York.

## II. STATEMENT OF FACTS

PHS, which now does business as Pink Energy, "sells, designs, operates, finances, and installs solar panels and energy systems for primarily residential applications." Compl. ¶ 5. Generac is an energy technology company that provides both prime and backup power systems for home and industrial use, along with clean energy products including solar and battery storage solutions. *Id*. ¶¶ 11-12. PHS alleges that beginning in early 2020, it entered an agreement with Generac to purchase component parts for its residential solar systems, initially through a third-party distributor. *Id*. ¶¶ 15, 19. The components of Generac's PWRcell system include an inverter, a Battery Cabinet for solar battery storage, a PV Link substring optimizer, and a safety device known as the SnapRS that connects to individual photovoltaic cells (solar panels) on rooftop solar arrays and can shut down power to those cells within seconds if needed to reduce output voltage to a safe level. *Id*. ¶¶ 23-28. PHS asserts that it continued to purchase these components across the following two years, and by late 2021 began negotiating the Buy/Sell

Agreement, which the parties executed on December 5, 2021, in order to buy directly from Generac. *Id*. ¶¶ 58, 68.

The Agreement governs the terms under which PHS would purchase clean energy products and accessories from Generac, including energy storage systems, battery modules, photovoltaic (PV) links, and SnapRS components. Agreement, § 1; Appendix #1. In addition to establishing pricing and terms of payment, *id*. §§ 3.2, 3.3, the Agreement clarifies that "[t]he course of dealing between Generac and [PHS] is subject to the terms of this Agreement" as well as to Generac's Invoice Terms and Conditions, its order confirmations, and its invoices, and that any terms conflicting with these documents are rejected. *Id*. § 3.9. Among the Agreement's other material terms are mutual indemnification provisions, with Generac's indemnification obligation explicitly extending to third-party claims involving products purchased prior to the Agreement's effective date. *Id*. §§ 3.6-3.8. Subject at all times to the parties' arbitration agreement, PHS also

> expressly agrees that any suit brought by any Party hereto relating to this Agreement shall be brought in the state or federal courts having jurisdiction in New York County, New York, and [PHS] hereby expressly consents to exclusive venue in such courts. This Agreement shall be construed, enforced, and performed in accordance with the laws of the State of New York without reference to the principles of conflicts of laws.

*Id*. § 8.2. Finally, the Agreement incorporates an arbitration agreement in § 8.6, providing that

> [u]nless otherwise mandated by applicable law or in connection with any third-party indemnification or contribution claims under this Agreement against a Party asserted in a pending action or lawsuit by the other Party by means of impleader or a cross-claim against a co-defendant Party, any dispute that cannot be amicably resolved shall be heard, settled, and decided under the Commercial Arbitration Rules of the American Arbitration Association in effect as of the date thereof by one arbitrator selected by the Parties in good faith, who shall be disinterested in the dispute and shall have no connection with either Party. If the Parties cannot agree on the choice of arbitrator, the arbitrator shall be appointed by the American Arbitration Association. Such arbitration shall be conducted in English and shall take place in New York City, NY. Judgment upon the award of the arbitrator is final and may be entered in any court of competent jurisdiction. The award shall

be made payable in United States dollars.  This arbitration provision, and any arbitration hereunder, shall be conducted pursuant to the Federal Arbitration Act.

*Id.* § 8.6.

Despite agreeing to this arbitration provision at the time when (as PHS has acknowledged) "PHS and Generac executed the Buy-Sell [Agreement]," Compl. ¶ 68, PHS seeks damages in this Court in connection with what it claims were faulty SnapRS units involved in customer complaints and other damages from alleged failures of this component.  *Id., e.g.*, ¶ 127.  PHS asserts eleven causes of action, without pleading mutually-exclusive counts in the alternative: (I.) violation of the Magnuson-Moss Warranty Act, *id.* ¶¶ 139-150; (II.) breach of the implied covenant of good faith and fair dealing, *id.* ¶¶ 151-157; (III.) promissory estoppel, *id.* ¶¶ 158-162; (IV.) breach of contract, *id.* ¶¶ 163-166; (V.) negligence, *id.* ¶¶ 167-173; (VI.) products liability for design defect, manufacturing defect, and failure to warn, *id.* ¶¶ 174-181; (VIII.) (*sic*)[1] breach of the implied warranty of merchantability and fitness for a particular purpose, *id.* ¶¶ 182-185; (VIII.) breach of express warranty, *id.* ¶¶ 186-190; (IX.) negligent interference with prospective economic relations, *id.* ¶¶ 191-196; (X.) fraudulent inducement of the Agreement, *id.* ¶¶ 197-201; and (XI.) equitable indemnification, *id.* ¶¶ 202-206.  Notably, PHS's allegations of fraudulent inducement apply only to the Agreement as a whole, and to the terms "limiting the potential damages PHS could recover from Generac," and not to the arbitration agreement or the forum selection clause.  *Id.* ¶ 201; Agreement §§ 5.4-5.5.

Every one of PHS's claims concern either purportedly defective SnapRS products it purchased from Generac pursuant to the Agreement, or alleged misrepresentations by Generac in connection with such SnapRS products.  Compl. ¶¶ 139-206.  As a result, each of these claims fall

---

[1] The Complaint includes two Count VIIIs and omits Count VII.

under the arbitration provision in § 8.6 of the Agreement, and should have been raised, if at all, in arbitration. Equally clearly, they "relate" to the Agreement and so fall under the forum selection clause.

### III.  ARGUMENT

**A.  The Parties' Agreement To Arbitrate Disputes Should Be Enforced**.

The Federal Arbitration Act ("FAA") "reflects an emphatic federal policy in favor of arbitral dispute resolution." *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012) (citation omitted). Under the FAA, arbitration provisions are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When a court is satisfied that a party to a valid written arbitration agreement has failed to comply with it, upon petition "the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (emphasis added). The FAA also provides that a court shall stay any litigation of issues properly referable to arbitration under such an agreement. 9 U.S.C. § 3. Dismissal is appropriate in place of a stay where all issues in the litigation are subject to arbitration.[2]

A party may compel arbitration pursuant to the FAA by showing "(1) 'the existence of a dispute between the parties'; (2) 'a written agreement that includes an arbitration provision which purports to cover the dispute'; (3) 'the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce'; and (4) 'the failure, neglect or refusal of the [plaintiff] to arbitrate the dispute.'" *Jarry v. Allied Cash Advance Va., L.L.C.*, 175 F. Supp. 3d 622, 624 (W.D. Va. 2016) (Moon, J.), *quoting Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-

---

[2] "Notwithstanding the terms of [9 U.S.C.] § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-710 (4th Cir. 2001).

6

501 (4th Cir. 2002). The second element, in turn, requires a court to decide (a) whether the parties entered into a valid agreement to arbitrate; and (b) whether the disputed claims fall within the scope of that arbitration agreement. *Dome Tech., LLC v. Golden Sands Gen. Contractors, Inc.*, 257 F. Supp. 3d 735, 741 (W.D. Va. 2017).

Here there can be no doubt of a dispute between the parties arising from a transaction related to interstate commerce, which PHS has failed or refused to arbitrate. That PHS filed this action instead of seeking arbitration pursuant to § 8.6 of the Agreement satisfies the first and fourth elements of the *Adkins* test. Nor can PHS contest the interstate nature of the parties' transactions. The Complaint alleges that PHS is a Delaware limited liability company headquartered in North Carolina that purchased SnapRS components from Wisconsin-based Generac, and sold solar energy systems containing SnapRS components to customers in at least four other states. Compl. ¶¶ 1, 2, 5, 35, 44-45, 48, 118. *See Marroquin v. Dan Ryan Builders Mid-Atl., LLC*, No. 5:19-CV-00083, 2020 WL 1171963, at *3 (W.D. Va. Mar. 11, 2020) (finding the interstate transaction element met and compelling arbitration where a Maryland company contracted to build a house in Virginia). The first, third, and fourth elements under *Adkins* are not in question on these facts and allegations.

The remaining element is also satisfied because PHS and Generac expressly agreed to arbitrate all their disputes pursuant to § 8.6 of the Agreement, a valid arbitration agreement that covers each claim PHS asserts. Accordingly, this Court should compel arbitration of PHS's claims.

1. **The Parties Entered A Valid Agreement To Arbitrate Disputes**.

The parties' intent to enter an arbitration agreement is determined under "ordinary state law principles governing the formation of contracts." *Chorley Enters. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015). PHS and Generac agreed that New York law would govern the interpretation and enforcement of the Agreement, including the arbitration provision in § 8.6.

7

Agreement, § 8.2.  Under New York law, the elements of an enforceable contract include "an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound."  *Ostojic v. Life Med. Techs., Inc.*, 162 N.Y.S.3d 27, 29 (N.Y. App. Div. 2022).  All of these elements are present here.

The arbitration provision in § 8.6 constitutes an offer that PHS unambiguously accepted.  "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."  *Kolchins v. Evolution Markets, Inc.*, 8 N.Y.S.3d 1, 9 (N.Y. App. Div. 2015), *aff'd,* 73 N.Y.S.3d 519 (N.Y. 2018) (citation omitted).  Section 8.6 was communicated in writing between two sophisticated parties negotiating a contract that governed the terms of their commercial relationship.  Any reasonable person presented with § 8.6 as a term of the Agreement for signature—which would signal acceptance of the arbitration provision—would understand that it manifested an invitation to conclude a bargain to arbitrate disputes.  The signature of PHS's authorized representative constitutes a positive and unambiguous acceptance of the offer of the arbitration agreement according to its terms.  *Id*. ("[I]n order for an acceptance to be effective, it must comply with the terms of the offer and be clear, unambiguous and unequivocal."); Agreement at 10 (signature page).

The parties' mutual promises to arbitrate "any dispute that cannot be amicably resolved" constitute adequate consideration.  "New York law provides that 'mutual promises to arbitrate constitute[] consideration sufficient to support [an] arbitration agreement.'"  *Filipkowski v. Bethpage Fed. Credit Union*, No. 20-CV-1754(JS)(AKT), 2021 WL 826016, at *5 (E.D.N.Y. Mar. 4, 2021), *citing Abeona Therapeutics, Inc. v. EB Rsch. P'ship, Inc.*, No. 18-CV-10889, 2019 WL 623864, at *4 (S.D.N.Y. Feb. 14, 2019), *quoting Kopple v. Stonebrook Fund Mgmt., LLC*, 794

8

N.Y.S.2d 648, 648 (N.Y. App. Div. 2005). Like the arbitration agreements in *Filipkowski*, *Abeona*, and *Kopple*, § 8.6 includes "mutuality of obligation" by requiring *either* party to arbitrate "any dispute" between them. *Filipkowski*, 2021 WL 826016, at *5.

Nor are the parties' mutual assent and intent to be bound subject to question. Mutual assent ("meeting of the minds") and intent to be bound to an arbitration provision embedded in a contract do not require that the provision be signed separately from the primary contract. *Highland HC, LLC v. Scott*, 978 N.Y.S.2d 302, 306 (N.Y. App. Div. 2014) (plaintiff intended to be bound by arbitration clause attached to primary contracts, as evidenced by the fact that plaintiff executed the primary contracts, did not object to any provision, accepted services and made payments under the contracts, and later filed an action alleging breach of the contracts). Intent to be bound by an arbitration provision is "tellingly" indicated by subsequent claims of breach of contract, which "thereby acknowledg[e] and rely[] on the very agreement that contains the arbitration clause [a plaintiff] seeks to disclaim." *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 812 N.Y.S.2d 435, 437 (N.Y. 2006) (affirming order to compel arbitration and noting that a plaintiff "may not pick and choose which provisions suit its purposes, disclaiming part of a contract while alleging breach of the rest.") Here, PHS executed the Agreement containing § 8.6; raised no objection to the arbitration provision at any time; purchased goods from and remitted payment to Generac under the contract; and filed this action alleging, among other things, breach of contract. PHS cannot now be heard to disclaim its assent to the arbitration provision, nor has it done so.

PHS raises no contract defense or other "grounds … at law or in equity" to revoke § 8.6. 9 U.S.C. § 2. "[A] party may resist enforcement of an agreement to arbitrate on any basis that could provide a defense to or grounds for the revocation of any contract, including fraud, unconscionability, duress, overreaching conduct, violation of public policy, or lack of contractual

9

capacity." *Basile v. Riley*, 136 N.Y.S.3d 595, 598 (N.Y. App. Div. 2020) (citation omitted). Plaintiff has conspicuously failed to allege that § 8.6 suffers from any such defect, and it cannot do so. Although Count X of the Complaint raises a claim of fraudulent inducement of the Agreement, it does not allege that the *arbitration clause* was fraudulently induced. "[A] broad arbitration provision is separable from the substantive provisions of a contract such that the agreement to arbitrate is valid even if the substantive provisions of the contract were [allegedly] induced by fraud." *Markowits v. Friedman*, 42 N.Y.S.3d 218, 222 (N.Y. App. Div. 2016) (holding that because the plaintiffs' fraudulent inducement claim related to the parties' entire agreement rather than the arbitration provision itself, "the arbitration agreement is valid and the claim of fraudulent inducement is for the arbitrator"). PHS does not and cannot claim that its agreement to arbitrate in § 8.6 was procured by fraud.

In short, PHS validly agreed to arbitrate disputes as a matter of generally applicable New York contract law.

> **2.    The Arbitration Agreement Encompasses PHS's Claims**.

Under the parties' arbitration agreement, "any dispute that cannot be amicably resolved shall be heard, settled, and decided under the Commercial Arbitration Rules of the American Arbitration Association in effect as of the date thereof." Agreement, § 8.6. This expansive arbitration provision is limited in only two respects: it excludes disputes "in connection with any third-party indemnification or contribution claims under this Agreement against a Party asserted in a pending action or lawsuit by the other Party by means of impleader or a cross-claim against a co-defendant Party," and it applies "[u]nless otherwise mandated by applicable law." *Id*. PHS's claims in the Complaint fall squarely within the scope of § 8.6 and must be submitted to arbitration.

Arbitration provisions applying to "any dispute" have broad application and presumptively support resolving doubts in favor of arbitration. *Green v. Zachry Indus., Inc.*, 36 F. Supp. 3d 669,

10

678 (W.D. Va. 2014). In *Levin v. Alms and Associates, Inc.*, the Fourth Circuit interpreted a provision very similar to § 8.6 which stated that "[a]ny dispute shall be submitted to binding arbitration" and held that its "language is broad enough to encompass *all* agreements and *any* disputes, past and present, especially given that the presumption in favor of arbitrability is particularly applicable when the arbitration clause is broadly worded." 634 F.3d 260, 267 (4th Cir. 2011) (emphasis in original). Likewise, the phrase "all disputes and claims between us" in an arbitration agreement covers even disputes that do not arise out of the contract between the parties. *Mey v. DIRECTV, LLC*, 971 F.3d 284, 293-294 (4th Cir. 2020); *see also Marroquin*, 2020 WL 1171963, at *3 (interpreting clause covering "*[a]ny dispute*," and observing that "similar language brings 'the broadest possible range of claims within the scope of arbitration'") (quoting *Univ. of Va. Patent Found. v. DynaVox Sys., LLC*, No. 3:15CV00015, 2015 WL 5794533, at *3 (W.D. Va. Oct. 1, 2015)).

Courts also read exceptions narrowly when interpreting arbitration agreements. The Fourth Circuit has cautioned that in interpreting the scope of arbitration clauses, "when faced with a general rule and enumerated exceptions, we interpret the exceptions narrowly, lest they overwhelm the rule." *Choice Hotels*, 252 F.3d at 711. *See also Univ. of Va. Patent Found.*, 2015 WL 5794533, at *4 (compelling arbitration in light of "the policies in favor of the broad interpretation and enforceability of arbitration clauses and narrow interpretation of arbitration clause exceptions").

Section 8.6 of the Agreement is precisely the sort of broad arbitration provision that courts in the Fourth Circuit have held to cover the largest range of potential claims. It mandates arbitration for "any dispute" between the parties other than specific third-party indemnification or contribution claims in pending actions, or as otherwise prohibited by law. As these two exceptions must be narrowly construed and the claims encompassed by the phrase "any dispute" are

11

maximally broad, § 8.6 must apply to each count in the Complaint. All of PHS's claims relate directly to its purchases of components from Generac, as well as to Generac's alleged statements about its SnapRS products. These claims therefore directly relate to the subject of the Agreement. Even if they did not, *any* dispute between the parties is covered by the arbitration provision, whether it predates or postdates the Agreement, and regardless of whether it arises directly out of the parties' contractual relationship. *Levin*, 634 F.3d at 267; *Mey*, 971 F.3d at 293-294.

Moreover, even if there were doubt as to whether § 8.6 applied to the claims raised in the Complaint—and there is none—the Supreme Court has long instructed that "ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019). Courts must therefore decide disputes about scope "in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Mey*, 971 F.3d at 292 (citation omitted). It is difficult to conceive how an arbitration agreement covering "any dispute" between Generac and PHS could be characterized with positive assurance as inapplicable to disputes arising directly out of the purchase and sale of products that formed the subject matter of the Agreement.

Because PHS agreed to arbitrate the disputes raised in the Complaint, the FAA requires enforcement of the arbitration agreement and Generac's motion to compel should be granted.

**B.     The Court Should Dismiss The Complaint Or, At A Minimum, Stay This Action Pending Arbitration of PHS's Claims**.

Although §3 of the FAA directs the district court to stay a lawsuit that raises only claims subject to a valid arbitration agreement, the Fourth Circuit has advised that dismissal is appropriate in such cases. *Choice Hotels*, 252 F.3d at 709-710; *accord A & G Coal Corp. v. Integrity Coal Sales, Inc.*, 600 F. Supp. 2d 709, 717 (W.D. Va. 2009). Because the issues in this litigation are all arbitrable, this Court should dismiss the Complaint and compel arbitration. *Ungava Techs. Inc. v.*

12

*Innerspec Techs., Inc.*, No. 6:17-cv-6, 2017 WL 2374367, at *5 (W.D. Va. May 31, 2017) (Moon, J.) (noting potential tension in Fourth Circuit precedent but following *Choice Hotels* and dismissing the case); *Jarry*, 175 F. Supp. 3d at 627 (same).

  **C.** **In The Alternative, The Court Should Transfer This Case To The Southern District Of New York Pursuant To 28 U.S.C. § 1404**.

  Should the Court decide not to dismiss the case pending arbitral proceedings, it should transfer the Complaint to the Southern District of New York under 28 U.S.C. § 1404. Courts "will enforce" forum selection clauses "'in all but the most exceptional cases.'" *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 209-210 (4th Cir. 2022), *quoting Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 63 (2013). As a result, courts in the Fourth Circuit will transfer an action based on a forum selection clause pursuant to 28 U.S.C. § 1404 provided that it designates a jurisdiction hosting a federal court. *Id*. at 210. Because the Agreement contains such a valid forum selection clause, this Court should enforce it.

  **1.** **The Forum Selection Clause Is Valid**.

  The United States Supreme Court "has consistently accorded choice of forum and choice of law provisions presumptive validity." *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996); *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470 (4th Cir. 2018) (noting the "presumption of enforceability" granted to mandatory forum selection clauses). Federal courts assess the validity of forum selection clauses under *federal* law. *WCC Cable, Inc. v. G4S Tech. LLC*, No. 5:17-CV-00052, 2017 WL 6503142, at *6 (W.D. Va. Dec. 15, 2017), *citing Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010). First, the court must determine whether the clause is mandatory or permissive. *Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 700 (E.D. Va. 2020). Mandatory clauses are presumed "prima facie enforceable for claims within their scope 'unless enforcement is shown by the

13

resisting party to be 'unreasonable' under the circumstances.'" *Id*. at 700-701 (citations omitted); *Atl. Marine*, 571 U.S. at 63 (the resisting party bears the burden of showing transfer is unwarranted). The next step, therefore, is to assess whether the clause is unreasonable, which it may be if:

> (1) it was the result of 'fraud or overreaching'; (2) 'trial in the contractual forum [would] be so gravely difficult and inconvenient [for the complaining party] that he [would] for all practical purposes be deprived of his day in court'; or (3) 'enforcement would contravene a strong public policy of the forum in which suit is brought.'

*Melo*, 439 F. Supp, 3d at 701, *quoting Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 213–14 (4th Cir. 2007).

A mandatory forum selection clause "'requires litigation to occur in a specified forum,' while 'a permissive clause permits litigation to occur in a specified forum but does not bar litigation elsewhere.'" *Card Isle Corp. v. Farid*, No. 7:20-CV-00708, 2021 WL 1856846, at *7 (W.D. Va. May 10, 2021) (citation omitted). Forum selection clauses are permissive unless they contain "specific language of exclusion." *BAE Sys.*, 884 F.3d at 472 (citation omitted). In other words, mandatory clauses contain clear language designating one and only one jurisdiction as a permissible forum. *Melo*, 439 F. Supp. 3d at 700. "Forum-selection clauses containing the word 'exclusive' are mandatory." *Card Isle*, 2021 WL 1856846 at *7; *accord Melo*, 439 F. Supp. 3d at 701 (citing cases finding that use of the word "exclusive" and specific references to venue indicate a mandatory clause).

The forum selection clause in § 8.2 is mandatory. PHS "expressly agree[d]" that any suit "*shall* be brought" in the New York state or federal courts, and "expressly consent[ed] to *exclusive venue* in such courts." Agreement, § 8.2 (emphasis added). Courts interpreting such language consistently designate it as mandatory "language of exclusion." *Whitaker*, 42 F.4th at 204, 210 n.7 (forum selection clause stating that "each party irrevocably submits to the exclusive

14

jurisdiction" of the state or federal courts in the city and county of New York contains "specific language of exclusion" that "confers mandatory jurisdiction in New York"); *Card Isle*, 2021 WL 1856846, at *7 (clause subjecting parties to "exclusive jurisdiction" of the state or federal courts of Fulton County, Georgia is mandatory); *Melo*, 439 F. Supp. 3d at 701 (clause stating that "jurisdiction … shall be vested exclusively in, and venue shall be laid in" the state or federal courts in San Francisco, California is mandatory). Like these clauses, § 8.2 excludes any venue but the state or federal courts of a single jurisdiction, New York, and thus contains quintessential "language of exclusion" making it prima facie enforceable.

PHS cannot meet its burden to overcome this presumption by showing that the forum selection clause is unreasonable. Although PHS has alleged one count of fraudulent inducement in connection with the Agreement as a whole, it has not alleged—and cannot allege—that the forum selection clause was the result of fraud. Like an arbitration clause, a forum selection clause must *itself* have been procured by fraud to render it invalid; "general claims of fraud" as to an agreement as a whole "'do not suffice to invalidate a valid forum selection clause.'" *PBM Cap. Invs., LLC v. Lalonde*, No. 3:13CV00008, 2013 WL 3443108, at *2 (W.D. Va. July 9, 2013) (citation omitted); *Blue Mako, Inc. v. Minidis,* 472 F. Supp. 2d 690, 704 (M.D.N.C. 2007) (allegation that a contract was induced by fraud "is insufficient" to show that a forum selection clause was unreasonable because plaintiff must show the clause itself was the product of fraud or coercion); *Coastal Mechs. Co., Inc. v. Def. Acquisition Program Admin.*, 79 F. Supp. 3d 606, 612 (E.D. Va. 2015) (same).

Nor can PHS show that litigating in a New York forum would cause it such grave inconvenience that it would be deprived of its day in court or that enforcing § 8.2 would contravene a strong public policy of this forum. PHS has already shown its readiness and ability to litigate

outside its home state by filing this action. Moreover, "mere inconvenience and expense are insufficient to render enforcement of a forum-selection clause unreasonable." *Coastal Mechs.*, 79 F. Supp. 3d at 612 (enforcing forum selection clause over Texas-based plaintiff's argument that travel to the selected forum in South Korea would be a "great inconvenience"); *accord Melo*, 439 F. Supp. 3d at 701-702 (collecting cases). PHS cannot seriously claim that litigating in New York instead of Virginia would create such difficulty as to deprive it of effective access to the courts, when courts find international travel insufficient to demonstrate unreasonableness. Because no Virginia public policy would be violated by enforcing the parties' contractual choice of venue, PHS cannot show § 8.2 is unreasonable under any prong of the Fourth Circuit's test. *See, e.g., WCC Cable*, 2017 WL 6503142, at *7-*12 (considering and rejecting Virginia statute as public-policy ground for overcoming a forum selection clause); *Melo*, 439 F. Supp. 3d at 702.

As a mandatory forum selection clause, therefore, § 8.2 is presumptively valid and enforceable, and PHS has no basis for claiming the clause should be set aside as unreasonable.

### 2. The Forum Selection Clause Covers PHS's Claims

Once a court has determined that a forum selection clause is valid, it must assess whether the clause applies to the claims asserted. *PBM*, 2013 WL 3443108, at *3. Clauses that address claims "ar[ising] out of or relat[ing] to" a contract are broad and "capable of an expansive reach." *Lewis v. Jayco, Inc.*, No. 3:18CV00100, 2019 WL 3797357, at *3 (W.D. Va. Aug. 12, 2019); *Whitaker*, 42 F.4th at 210 ("relating to" is a broader term than "arising out of"). The application of clauses containing such language is not limited to breach of contract but instead "embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Jayco*, 2019 WL 3797357, at *3 (citation omitted); *Bartels by and through Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 678 (4th Cir. 2018) (forum selection clause applying to claims "in connection with" contract "broadens the scope of the clause beyond

16

pure contract" and extends it to all disputes with a significant relationship to the contract). Such clauses apply to statutory, tort or fraudulent inducement claims as well as to contract- or warranty-related claims. *Bartels*, 880 F.3d at 678; *Jayco*, 2019 WL 3797357, at *3; *PBM*, 2013 WL 3443108, at *3.

Here, the parties' forum selection clause contains just such expansive language. Section 8.2 applies to "any suit brought by any Party hereto relating to this Agreement." Agreement, § 8.2. The clause—which contains the broader term "relating to"—therefore applies to any claims having a significant relation to the contract, including statutory claims (Count I), tort or indemnity claims (Counts V, VI, IX, XI), and fraud claims (Count X) as well as contractual or quasi-contractual claims (Counts II-IV, VIII (1), VIII (2)). As discussed above, every one of these claims involves the sale of the very Generac products that formed the subject matter of the Agreement.

The Court should therefore apply the forum selection clause to all of PHS's claims.

### 3. Transfer Is Appropriate Pursuant to 28 U.S.C. § 1404

Because a valid forum selection clause applies to the claims raised in the Complaint, this case is subject to transfer to the Southern District of New York. "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine*, 571 U.S. at 62.

Section 1404 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The Supreme Court has instructed that when the parties' agreement contains a valid forum selection clause, "the plaintiff's choice of forum merits no weight" and that "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer

17

to the forum for which the parties bargained is unwarranted…. Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests," but rather only "public-interest factors," which "will rarely defeat a transfer motion." *Atl. Marine*, 571 U.S. at 63-64.

Such public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id*. at 62 n.6. One court in this district surveyed the case law applying *Atlantic Marine* and found very few cases in which public interest factors rose to the level of "extraordinary circumstances," virtually all of which relied on avoidance of duplicative litigation. *WCC Cable*, 2017 WL 6503142, at *17.

PHS cannot establish that any of these public interest factors "overwhelmingly disfavor a transfer" to the parties' chosen forum. *Atl. Marine*, 571 U.S. at 67. As a measure of court congestion, the median time from filing to disposition of civil cases was 5.7 months in the Southern District of New York and 13.1 months in the Western District of Virginia, as of June 30, 2022.[3] This factor weighs in favor of transfer, not against it. Virginia has little interest in resolving a dispute between a North Carolina company and a Wisconsin company that agreed to resolve their differences in New York. Nor is it reasonable to expect a Virginia federal court sitting in diversity to be as much "at home" with New York law as a federal court in New York. And certainly there is no risk of creating duplicative litigation in multiple districts by enforcing the forum selection clause in this case, as the dispute involves only two parties and will be resolved in one forum.

---

[3] U.S. District Courts, Combined Civil and Criminal Federal Court Management Statistics (June 30, 2022), https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf.

In short, PHS cannot establish the "extraordinary circumstances" necessary to overcome a motion to transfer pursuant to § 1404, and if this Court does not dismiss this action, it should therefore transfer the case to the Southern District of New York.

## IV.  CONCLUSION

For the foregoing reasons, the Court should issue an order (i) compelling PHS to arbitrate the claims raised in the Complaint and (ii) dismissing, or, in the alternative, staying this action pending the outcome of arbitration.  In the alternative, this Court should transfer venue to the United States District Court for the Southern District of New York.

Dated:  September 23, 2022

Respectfully submitted,

/s/ Glenn Pulley
Glenn Pulley (VSB No. 15677)
Amanda Morgan (VSB No. 70210)
GENTRY LOCKE LLP
801 Main Street, 11th Floor
Lynchburg, VA 24504
Telephone:  434-455-9940
Facsimile:  540-983-9400
pulley@gentrylocke.com
morgan@gentrrylocke.com

Michael Gill (*pro hac vice forthcoming*)
Michael Olsen (*pro hac vice forthcoming*)
Gina Jordt (*pro hac vice forthcoming*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600 Telephone
(312) 701-7711 Facsimile
mgill@mayerbrown.com
molsen@mayerbrown.com
gjordt@mayerbrown.com

Elspeth Hansen (*pro hac vice forthcoming*)
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, California 94306
(650) 331-2000 Telephone

19

(650) 331-2060 Facsimile
ehansen@mayerbrown.com

Andrew Spadafora (*pro hac vice forthcoming*)
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000 Telephone
(202) 263-3300 Facsimile
aspadafora@mayerbrown.com

*Attorneys for Generac Power Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of September, 2022, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which provided electronic service to all counsel of record.

/s/ <em>Glenn W. Pulley</em>